WHITAKER CEMENT CO. et al. v. HUNTINGTON DRY PULVERIZER CO. et al.

(Circuit Court of Appeals, Third Circuit.   July 6, 1899.)

PATENTS—INFRINGEMENT—CRUSHING MILLS.

An essential feature of the machine covered by the Huntington patent, No. 277,134, for a crushing mill having the rollers suspended from above, is that the suspending mechanism shall be constructed and arranged so that the rollers may swing radially, and in operation be thrown outward against the interior surface of the die by centrifugal action; and the patent is not infringed by a mill having a single roller suspended over the center of the pan by a shaft depending from a universal joint, and positively rotated by the driving pulley, and which is not thrown outward by centrifugal force, but would remain in its position in the center if it were not drawn outward by the workman.

Appeal from the Circuit Court of the United States for the District of New Jersey.

Frederick P. Fish and Edmund Wetmore, for appellants.
Frederick S. Duncan and Frederic H. Betts, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

DALLAS, Circuit Judge.   This is an appeal from a decree of the circuit court of the United States for the district of New Jersey, by which it was adjudged that the defendants below, by purchasing and using certain centrifugal pulverizing mills, known as the "Griffin Mills," had infringed the first claim of letters patent No. 277,134, to Frank A. Huntington, for a crushing mill, which claim is as follows:

"(1) The pan, A, having the interior vertical circular die, F, in combination with the rollers, G, shafts, I, and means for suspending said shafts from above so that said rollers may rotate against the die by centrifugal force, substantially as herein described."

We entertain no doubt of the validity of this patent, or of the meritorious character of the invention to which it relates.   The only question is, does the Griffin mill conflict with it?   And the solution of this question depends upon the scope which should be accorded to the claim, with reference especially to the phrase, "means for suspending said shafts from above so that said rollers may rotate against the die by centrifugal force, substantially as herein described."   The effect ascribed to this language by the appellees is that it covers and includes "every construction of centrifugal crushing mills in which the suspension of the rollers by means of shafts from above is combined with the simultaneous rotation of the rollers around the inner periphery of the die, and with rotation on their axis, and with pres-

sure of the roller against the die during this operation of centrifugal force." In other words, they contend that "the claim is not limited to any particular means of suspending the roll, or of producing the other necessary actions of the roll, although in the prior part of the patent and in the drawings only one means of accomplishing these results is shown and described." We cannot adopt this view. We are not disposed to construe this patent any more narrowly than its terms and the prior state of the art require; but in view of what had been previously done, and what Huntington himself declared to be a full, clear, and exact description of his invention, we find it impossible to accept the opinion of the appellee's expert that the monopoly secured to the patentee is inclusive of any and every suspension by means of a shaft of the roll clear of the bottom of the pan, combined with any construction which will enable the roll to travel around the die, and to be pressed against the same by centrifugal force when the machine is in operation, the roll at the same time rotating on its own axis. Centrifugal force was not discovered by Huntington, and was as exempt from exclusive appropriation as is electrical force or the force of gravity. Nor was he the first to employ it in this particular art. Its prior utilization in crushing mills is clearly disclosed by this record. It is shown in the patent to William E. Harris for an ore-grinding mill, and also in the patent to Charles Lucop for an improvement in machinery for grinding and pulverizing grain, ores, etc., where the claim was, in substance, for a machine with the central shaft, arms, and balls or rollers, carried by slots in the side arms, to permit a free centrifugal action of the balls or rollers. But the pre-existing centrifugal crushing mills were not satisfactory, and this was chiefly due to the fact that the centrifugal force, as they applied it, was to a considerable degree neutralized by the friction of the rollers against the bottom of the pan, which also caused the rollers to wear out. This was the main defect in the old constructions, and to its correction the attention of Huntington was chiefly directed. He conceived the idea that, by removing the rollers from contact with the bottom of the pan, frictional resistance would be avoided, and that the wear of the rollers would be, though not entirely prevented, materially diminished; and accordingly he resolved that the rollers, instead of resting upon the pan, should be suspended above it. But he perceived that the agent upon which he relied to do the work would not be called into service by any manner of suspension which might at random be resorted to. It was absolutely requisite that some specific means should be devised which would assure the needful application and operation of centrifugal force,—"means for suspending," says the claim, "so that said rollers may rotate against the die by centrifugal force." Huntington did not suppose himself to be entitled to a monopoly of every mode of suspension by which centrifugal force might be freely exerted in a crushing mill. His object was to so suspend as to actuate that force, and, by its unimpeded operation, to cause the rotation of the rolls against the die. It was, however, not his result, but his means, for which he sought and received a patent; and for description of those means the claim, in terms, refers to the specification, in

which we find, not merely a suggestion of one embodiment of his invention, but a deliberate statement of the sum and substance of the invention itself. "It consists," we are told, "of a pan having an interior circular die around its periphery, and, in combination with this, of a series of rollers which roll against this die; being suspended by vertical shafts turning in sleeves, which have horizontal journals above, so that the rollers may swing radially. The suspending mechanism is supported upon a cross or frame which is driven by a central shaft, and the rollers are thus thrown outward against the die by centrifugal action." There is nothing elsewhere in the patent to qualify or affect this statement, and it is not possible, in our opinion, to give to its language the broadly inclusive significance which the appellee would have us accord to it. It may be conceded that, although "a series of rollers" are mentioned, infringement could not be successfully evaded by merely removing from a Huntington mill all of its rollers save one. We do not doubt that for "horizontal journals" any equivalent hinge or hinging device might be substituted without departing from the principle of the invention, or that a suspending mechanism eccentrically supported in some other way (if that be possible) than upon a cross or frame might still be covered by the patent; but it is, we think, of the very essence of the invention that the hinge and the support, whatever may be the form of either, must be constructed and arranged "so that the rollers may swing radially," and be "thrown outward against the die by centrifugal action." Further on, it is true, it is said that "the vertical shafts carrying the rollers may be suspended in various ways"; but, as the option thus indicated is subject to the condition that the shafts shall be suspended "so as to allow the rollers to move to and from the center," the effect of this phrase is only to make it more obvious that Huntington's invention, as he himself understood it, consisted in his provision for radial swing of the rollers, and for their being thrown outward and caused to rotate against the die by centrifugal force.

The views we have expressed respecting the construction of the patent are conclusive upon the question of infringement. The Griffin mill is unlike that of Huntington, not only in form and structure, but radically and in principle. It has but one roller, and that is not eccentrically, but centrally, suspended. Its shaft depends from a universal joint, and is not supported upon a cross or frame by a horizontal journal. Its roller is positively rotated by the driving pulley, and not by being brought against the die by centrifugal force. That these differences are substantial is shown by the differences in operation which result from them. In the Griffin mill the roller is not thrown outward by centrifugal action, but would never leave its position over the center of the pan if it were not pulled or drawn outward by a workman. The universal joint of the Griffin mill, which to it is essential, could not be used in that of the patent. In short, we have reached the conclusion that, both in construction and in mode of operation, the two machines are essentially dissimilar, and that, therefore, they cannot be regarded as being, in the sense of the patent law, substantially identical. It follows that the decree of the cir-

cuit court must be, and it is, reversed; and the cause will be re-manded to that court, with direction to enter a decree dismissing the bill of complaint with costs.