## BAKER PERKINS CO., Inc., v. THOMAS ROULSTON, Inc.

### No. 5211.

District Court, E. D. New York.

Oct. 13, 1931.

Merrell E. Clark, of New York City (Merrell E. Clark and J. B. Cunningham, both of New York City, of counsel), for plaintiff.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper and C. B. Townsend, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a patent infringement suit involving letters patent No. 1,771,020, granted July 2, 1930, to Richard Thurm and Eugene Oscar Engels, and by them assigned to the plaintiff. The invention relates to a traveling tray oven used in commercial baking.

The inventors state in their specification that they have discovered that in carrying material through successive oven chambers the best results are obtained "if the loaf-developing and finishing treatments are severalized and performed as two tasks, mutually correlated though independently regulated."

The first operation consists in causing the trays to be carried through a so-called conditioning chamber. In this chamber "consistent, rapid and economical loaf-conditioning" is said to be obtained; in the subsequent pass or stages, bake-finishing is the aim.

We learn from the specification that the "loaf-conditioning" referred to as the operation conducted in the first pass is the conversion of proofed dough into a loaf that is sized, shaped, and preheated, but unbaked. On the other hand, "bake-finishing" is the conversion by baking of the conditioned loaf into a finished article. To make the terminology entirely clear, the specification defined "proofing" as "the starting of yeast fermentation in the dough mixture, to impart to the dough its first 'raise.'"

The oven in which these two operations are thus carried on is deemed to be the invention, for, as the specification states, the loaf-conditioning functions and the bake-finishing processes were performed throughout the greater part of the working length of the ovens of the prior art in mixed relationship that is, with no completion of the former function before the beginning of the latter.

The importance of separating these two functions is stressed at great length in the specification, and the means for making the two operations continuous and yet without overlapping consist particularly in the construction of the so-called conditioning chamber.

At the entrance to this chamber is a steam pipe for dampening the loaves in the traveling tray. Near the floor of this chamber

heating elements are provided, so constructed as to keep the products of gas combustion from the atmosphere of the conditioning chamber and spreading the burner heat throughout the lower part of the conditioning chamber.

An important element in the design of the conditioning chamber is a steam pocket 13 located in the upper part thereof and having its end walls formed by downwardly projecting plates or baffles. To the steam pocket 13, steam is supplied through a pipe 16; and, because the pocketed steam tends to cling to the upper part of the chamber, inclined parts of the tray conveyor are provided to guide the loaves first upwardly into the confined steam-laden atmosphere and then downwardly through a similar inclined part, out of the pocket.

The inventors emphasize the desirability of stabilization of temperature and humidity in the conditioning chamber, and thus in the manner described they sought to prevent gas or air currents from sweeping through the conditioning chamber and dissipating the atmosphere therein.

The inverted pocket 13 during normal operation of the oven is filled with steam, and vapors from the loaves rise, and such vapors tend to accumulate in this pocket. To dispose of the excess volume of such vapors, means are provided by venting them into a stack 19 through a valve controlled outlet 20. It is thought that such provision for relieving the inverted pocket of such excess vapors does not destroy the stabilization of temperature and humidity sought in the conditioning chamber.

As an additional means for preventing gas or air currents from sweeping through the conditioning chamber, the inventors located that chamber in what they term a zone of minimum draft found at about half the height of the oven housing. It is said that this positioning of the conditioning chamber assists in retaining the steam-charged atmosphere quiescent.

The alleged infringing ovens were manufactured by the Petersen Oven Company, Inc., of Chicago, and purchased by the defendant from said company; and they are used by the defendant.

Claims 4 to 8, inclusive, 13, and 17 to 25, inclusive, are alleged to be infringed.

Defendant contends that in the ovens which it uses there is an air current flowing in a direction opposite to the motion of the conveyor in all of the passes of the oven and from right to left. This air current, in passing from right to left through the first chamber, has its outlet at the loading aperture of the oven. It is contended, therefore, that in these ovens there is no steam pocket in a neutral or minimum draft zone.

It is also urged that the defendant's ovens have no provision for separating the conditioning and baking processes, and do not in fact so separate them, but on the contrary mix those operations throughout the greater part of the length of the oven, as in the prior art.

I am not convinced by the testimony in the case that in the defendant's ovens the loaf-conditioning is completed before the bake-finishing begins; nor that the loaf-conditioning is completed in the conditioning chamber. Though there is difference of opinion as between plaintiff's witness Engels and the defendant's witnesses Petersen, Hoppe, and McNulty, as to where the conditioning, as defined in the patent, may be regarded as completed in the defendant's ovens, it is significant that the plaintiff's expert stated, referring to Defendant's Exhibit E: "I would say that conditioning is finished at the point $X^2$ or some one or two trays ahead of it, depending upon the type and size of loaf baked."

This point $X^2$ is beyond the first "pass," or the compartment which the plaintiff likens to the conditioning chamber of the patent.

Moreover, I find testimony of defendant's witness Hoppe perhaps more convincing than that offered on this point by any other witness in the case. In answer to the question as to where the dough becomes fully expanded into the final size of the loaf, he said: "In some place between Y and Z, I cannot observe it, but it must be between the two points. * * * When it travels on this pass it gets fully shaped."

Then again:

"Q. Now, assuming that the term 'loaf conditioning' means the conversion of a piece of proofed dough into a loaf that is virtually sized, shaped and pre-heated but unbaked, where do you say that loaf conditioning takes place in the Roulston oven? A. You couldn't say a point where that happens because conditioning and developing the loaf, and baking are processes which overlap. * * *

"Q. And through what part of the working length of this oven do they go on together? A. The baking starts when the loaf is put in the oven, and so does the conditioning."

"Q. Yes. A. Because the heating up of the loaf is a part of the baking, and probably the point where it is fully shaped, as you talk about it, is here in this point, as it is defined in the patent. * * * *"

"Q. But you say from the entrance of the loaf up to the point and beyond Y, both conditioning and baking are going on indiscriminately? A. Absolutely."

In respect to the matter of stabilization of the temperature and the humidity in the conditioning chamber, of which condition much is made in the patent, the testimony of Petersen, Hoppe, and McNulty leaves no reasonable ground to doubt that there is a considerable air draft from right to left through the chamber in which the first pass is made.

Such operation of the oven is quite different from the quiescent condition urged by the patentees as essential or desirable for the proper operation of their oven, though apparently between baffles in defendant's ovens there is no circulation, as was admitted by Dr. Petersen.

It would seem that, in the matter of continuous draft, the defendant's oven differs from that of the patent, because in the former the combustion takes place, not in the oven proper, but in burners located near the blower. The blower forces the heated air into various parts of the oven through distributing ducts. Part of it is sucked back through other ducts, thence to the duct in the top of the oven, and back to the blower. With new gas and air constantly supplied to the blower, an excess of gases develops which must escape from the oven, and can do so only by passing from right to left in the first pass.

On first consideration I encountered difficulty with the thought that the air between the baffles was dead air, and that to that extent the condition in the first pass of defendant's oven was the equivalent of the pocketed steam in pocket 13 of the patent; but witness McNulty explains, and I think with conviction, that the sloping passageway created by the construction of the under side of baffle p² in defendant's oven in the first pass prevents the retention of any moisture, and is in that respect quite different from the construction and function of the baffles 14 and 15 of the steam pocket 13 of the patent.

With the foregoing understanding of the patent in suit and of the defendant's ovens, we may now proceed to a consideration of the bearing of the claims at issue on the defendant's structure.

Claims 4 to 8 include the conditioning chamber as an essential element of the structure defined in those claims. For the reasons heretofore expressed, I do not think that the defendant's ovens have a conditioning chamber of the character indicated.

Claim 13 presents some difficulty. It reads: "13. In a traveling tray bake oven, an initial pass, an inverted pocket extending part way only the length of said first pass along its ceiling, means for introducing vapor into the pocket, means for introducing steam into the pass in advance of the pocket, means for heating the pass and pocket, a vapor outlet communicating with the introductory part of said pass at a place ahead of said pocket, and conveyor means for moving goods while traveling through said pass into, through and out of contact with a body of vapor contained in said pocket."

In terms this claim is infringed, but, when the claim is construed in the light of the specification, I cannot find that the defendant has the equivalent of "an inverted pocket."

The principle of law involved is stated in Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136, and Burroughs Adding Mach. Co. v. Felt & Tarrant Mfg. Co. (C. C. A.) 243 F. 861.

 In other words, claims can be no broader than the invention, and, when there can be no doubt, as there is none in this case, as to the scope of the invention as defined in the specification, the claims should not be so interpreted as to indicate a broader invention.

If there were any doubt from a reading of the specification as to what the patentees believed and claimed their invention to be, it would be removed by a consideration of the file wrapper and contents of the patent in suit. As originally filed, there were twenty-six claims, all of which included as an element the "conditioning chamber." There is nothing in the prosecution of the application which warrants the conclusion that the invention as originally as well as finally described in the specification included an oven in which the first pass was conducted in a compartment other than a conditioning chamber.

Claims 17 and 18 in terms specify a loaf-conditioning chamber, and therefore, with the understanding heretofore reached by me, I do not find those claims infringed.

Claim 24 includes as an element "a vent connecting the upper of said chambers with the outside." This vent is indicated by dotted lines in the part of the stack 19, but there

is no reference to this vent in the specification. The claim also includes a conditioning chamber as an element, and for that reason is not infringed.

Claim 25 likewise includes in terms as an element a conditioning chamber, and is not infringed.

There remain, therefore, for consideration claims 19 to 23, which do not in terms specify a "conditioning chamber." However, for the reasons stated in the consideration of claim 13 and the authorities cited in connection therewith, I am compelled to hold that, if these claims are valid, they must be construed within the principle of the invention as stated in the specification. So construed, the defendant's oven does not infringe.

Having reached this conclusion that none of the claims is infringed, it becomes unnecessary to consider the validity of the claims, or the defense that the patentees were not the original inventors. I may say in passing, however, that I found no evidence which would justify me in holding that Ford contributed to the invention.

The defendant may have a decree dismissing the complaint.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.