UNITED STATES AXLE LUBRICATOR Co. *v.* WURSTER.

*(Circuit Court, E. D. New York. April 5, 1889.)*

PATENTS FOR INVENTIONS—INFRINGEMENT—AXLE LUBRICATORS.

The claim of letters patent No. 242,141, May 31, 1881, to Laskey & Arnold, for an axle lubricator, is, in combination with the axle and box, the oil chamber communicating with the interior of the box, and provided with a supply orifice, an inwardly opening self-acting valve, and a male screw-thread upon the exterior of its outer portion, a force-pump or injector provided with a discharge nozzle, adapted to enter the supply orifice and push back the valve, and a coupling sleeve provided with an internal thread to engage with the thread in the oil chamber, all arranged, etc. All the claims in the original application were rejected, and the patent was granted only when the description and claim were modified by stating that the coupling sleeve was provided with the internal thread, etc. Various methods of lubricating axles had been previously devised, and that described in letters patent No 120,515, October 31, 1871, to Harvey, consisted of a syringe with a piston, reservoir, and a communicating nozzle, adapted for insertion into a conical orifice in the hub or journal. *Held,* that a device having a conical nozzle fitting into a conical orifice, instead of the screwed sleeve, was not an infringement.

In Equity.

Suit by the United States Axle Lubricator Co. against F. W. Wurster, to restrain the infringement of a patent.

J. C. Clayton, for complainant, cited:

*Johnson v. Root,* 1 Fish. Pat. Cas. 351; *Conover v. Rapp,* 4 Fish. Pat. Cas. 57; *Singer v. Walmsley,* 1 Fish. Pat. Cas. 558; *Burden v. Corning,* 2 Fish. Pat Cas. 477; *Brighton v. Wilson,* 18 Fed. Rep. 378; *Child v. Iron Works,* 19 Fed. Rep. 258.

*Philipp, Phelps & Hovey,* for defendant, cited:

*McCormick v. Talcott,* 20 How. 405; *Bragg v. Fitch,* 121 U. S. 478–483, 7 Sup. Ct. Rep. 978; *Railway Co v. Sayles,* 97 U. S. 554; *Duff v. Pump Co.,* 107 U. S. 636, 2 Sup. Ct. Rep. 487; *Blake v. San Francisco,* 113 U. S. 679, 5 Sup. Ct. Rep. 692; *Wicke v. Ostrum,* 103 U. S. 461; *Fay v. Cordesman,* 109 U. S. 408, 3 Sup. Ct. Rep 236; *Zane v. Soffe,* 110 U. S. 204, 3 Sup. Ct. Rep. 562; *Stephenson v. Railroad Co.,* 114 U. S. 149, 5 Sup. Ct. Rep. 777; *Grier v. Wilt,* 120 U. S. 412, 7 Sup. Ct. Rep. 718; *Bussey v. Manufacturing Co.,* 110 U. S. 131, 4 Sup. Ct. Rep. 38; *Machine Co. v. Murphy,* 97 U. S. 125; *Signal Co. v. Signal Co.,* 114 U. S. 87, 5 Sup. Ct. Rep 1069; *Rowell v. Lindsay,* 113 U. S. 97, 5 Sup. Ct. Rep. 507; *Burr v. Duryee,* 1 Wall. 573; *Werner v. King,* 96 U. S. 230; *Brown v. Davis,* 116 U. S. 237, 6 Sup. Ct. Rep. 379;

*Prouty* v. *Ruggles*, 16 Pet. 341; *Clements* v. *Apparatus Co.*, 109 U. S. 641, 3 Sup. Ct. Rep. 525; *Shepard* v. *Carrigan*, 116 U. S. 593, 6 Sup. Ct. Rep. 493; *Sutter* v. *Robinson*, 119 U. S. 530, 7 Sup. Ct. Rep. 376: *Sargent* v. *Lock Co.*, 114 U. S. 63, 5 Sup Ct. Rep. 1021; *Leggett* v. *Avery*, 101 U. S. 256; *Vulcanite Co.* v. *Davis*, 102 U. S. 222; *Snow* v. *Railway Co.*, 121 U. S. 617, 7 Sup. Ct. Rep. 1343; *Weir* v. *Morden*, 125 U. S. 98, 8 Sup. Ct. Rep. 869; *Hendy* v. *Iron Works*, 127 U. S. 370, 8 Sup. Ct. Rep. 1275; *Hartshorn* v. *Barrel Co.*, 119 U. S. 664, 7 Sup. Ct. Rep. 421; *Water-Meter Co.* v. *Desper*, 101 U. S. 332.

LACOMBE, J    This is a suit to restrain the infringement of a patent for axle lubricators, issued May 31, 1881, to Laskey and Arnold, (No. 242,141,) and assigned to the complainant.    The single claim of the patent is:

"In combination with the axle, A, and box, B, the oil-chamber, D, communicating with the interior of said box, and provided with a supply orifice, an inwardly opening self-acting valve, d, and a male screw-thread upon the exterior of its outer portion, a force-pump or injector provided with a discharge nozzle adapted to enter said supply orifice and push back the valve, d, and a coupling sleeve, H, provided with an internal thread to engage with the thread on the oil-chamber, all arranged and adapted to operate substantially as and for the purposes described."

Prior to the granting of this patent, Charles A. Wakefield (No. 115,-914, June 13, 1871) had suggested the application of oil or grease to the friction surface between the hub and the axle by means of a perforation in the axle and nut, whereby the lubricant might be supplied without taking off the wheel or nut.    John T. Wilson also (March 9, 1869, No. 87,609) had devised an oil chamber or reservoir constructed in the axle, with an accessible opening through which it might be supplied with a lubricating material, and connecting with an opening or perforation through the axle.    Aaron Richardson (July 29, 1851, No. 8,251) had also devised an inwardly opening self-acting stopple (consisting of a plug-valve and spiral spring) for use in connection with oil-cups.    W. H. Harvey (October 31, 1871, No. 120,515) had also devised, as a lubricator for axles, a syringe with piston, reservoir, and a communicating nozzle adapted for insertion into a conical orifice in the hub or journal, through which the oil or grease might pass to the friction surface. Elias W. Moyer (January 28, 1878, No. 201,193) had also combined perforated axles, plugged supply orifices and reservoirs with packing of wick.    In this state of the art the complainant's assignors presented their particular combination of improvements in axle lubricators, and asked for a patent.    They described their invention as one relating to improvement in oiling carriage axles without removing the wheel, or even holding the nut from the axle, such improvement consisting—

"In attaching to the nut, box, axle, or hub an oil-chamber communicating by suitable passages or conduits with the space between the axle and the box, and provided with a supply orifice closed by a self-acting valve opening inward, and adapted to be retracted by exterior pressure thereon, and permit the insertion in said orifice of the nozzle of a force-pump or injector, as will be further described.    It further consists in the use, in combination with a carriage axle and its box, of an oil-chamber communicating by a suitable passage or conduit with the interior of said box, and provided with a supply

orifice having a self-closing valve opening inward, and a force-pump or injector, provided with a nozzle adapted to fit said supply orifice and push back said valve, and a packing to prevent leakage of the oil around said pump or injector nozzle. It further consists, in the combination with the axle of a carriage and its box, of an oil-chamber secured to, or forming a part of, the nut for securing the wheel upon the axle, said chamber communicating through a suitable passage or conduit with the interior of the wheel-box, and provided with a supply orifice having an inwardly opening and self-closing valve, as will be further described. It further consists, in the combination with the axle of the carriage and its box, of an oil-chamber attached to said axle or wheel, and communicating with the interior of said box by a suitable passage or conduit, and provided with a supply orifice, having an inwardly opening and self-closing valve, a force-pump or injector provided with a nozzle adapted to fit said supply orifice and retract its valve, and a coupling adapted to firmly secure said pump or injector to said oil-chamber during the operation of oiling the wheel."

This application contained four claims, the second of which was for the combination with a carriage axle and its hub-box of "an oil-chamber attached thereto and communicating with the interior of said box, and provided with a supply orifice, a spring-actuated valve for closing said orifice, and a force-pump or injector, provided with a discharge nozzle adapted to enter said supply orifice and push back the valve, substantially as and for the purposes described." This claim covered, besides the other elements of the combination, any method of bringing the oil-pump into connection with the axle or box by means of a discharge nozzle entering a supply orifice. It covered such a conical-shaped nozzle forced into a conical orifice as that devised by Harvey. This claim the patent-office rejected. The original application also contained a fourth claim, as follows:

"(4) In combination with the axle, A, and box, B, the oil-chamber, D, communicating with the interior of said box, and provided with a supply orifice and an inwardly opening self-acting valve, d, a force-pump or injector, provided with a discharge nozzle adapted to enter said supply-orifice, and push back the valve, d, and a coupling sleeve, H, all arranged and adapted to operate substantially as and for the purposes described."

This claim is more restricted than the second. It covered a device (the coupling sleeve) which had not yet appeared in connection with axle lubricators. By means of it the pump and the axle could be brought into such close connection that when, by reason of clogging or obstruction from dirt or congealed oil, the pump was worked with greater force than usual, there would be no risk of the parts which formed the joint flying apart or leaking. The efficiency of this coupling sleeve was plainly to a large extent dependent on its method of construction. Unless adapted to resist the horizontal motion produced by the action of the pump under such circumstances, it subserved no useful function. In the description of their invention, however, Laskey and Arnold set forth that the coupling sleeve was adapted to be screwed upon the thimble surrounding the supply orifice "so as to secure the pump firmly to the chamber, if desired." The patent-office rejected all the claims in the original application. After much correspondence it allowed the fourth one, modified, however, by

the insertion of clauses qualifying the description of the coupling sleeve by stating that it was provided with an internal thread to engage with the thread on the oil-chamber. The description of the improvement was also amended to conform to the modification of the claim; and, the applicants acquiescing in this modification, the patent issued.

The defendant, under a patent issued to him January 25, 1887, No. 356,519, manufactures axle lubricators containing a combination of perforated axle, oil-chamber, inwardly-opening valve, oil-pump, injector nozzle, and orifice. The only question necessary to discuss here is whether the method of connecting the nozzle with the orifice used by defendant is different from that covered by complainant's claim as allowed, to what extent it differs, and the effect of that difference upon the complainant's right to an injunction. The defendant (who does not in that particular follow his own patent) uses simply a conical nozzle fitted into a conical orifice,—the same device which Harvey used for oiling through the hub. The insertion of this nozzle forces back the valve, and pressure by the hand, assisted by the weight of the body, secures the joint thus formed. The force, however, which thus secures the joint is undoubtedly, in practice, not as efficient as is the screwed sleeve, and this force is supplied not by the machine itself, but from outside. The complainant invokes the doctrine of equivalents, and insists that, where a construction embodies a number of elements in combination, the defendant cannot be relieved from the charge of infringement by showing that, instead of using one of the elements enumerated in the claim, he uses in substitution therefor a known mechanical equivalent as a part of the combination, which equivalent acts in substantially the same way, and produces substantially the same result. This proposition, however, is not broadly applicable to what are called "secondary" inventions, especially where, as in this case, not only a particular element of the combination has been made material, but the applicant has been expressly required to limit his claims to a combination which specifically includes the details of that element, before he can get his patent. When the applicants in this case acquiesced in the decision of the patent-office, and inserted in their claim the statement that the coupling and thimble, of which they claimed a monopoly in combination with the other parts, were threaded, they took an extremely narrow patent, to be strictly construed against them and in favor of the public. The patentability of complainant's combination was, in view of the state of the art, extremely doubtful. It was a mere aggregation of known parts distributed between two separate articles,—an axle and a force-pump,—and it was only the sleeve, so adapted as to become by the exercise of its own force the connecting link which united both temporarily into a single structure, that induced the patent-office to accept it as a combination at all. Whether, even when so restricted, it was patentable, need not now be decided. It is sufficient to hold that it is not infringed by an aggregation of parts, which omits the very element that the applicants by their acquiescence in the decision of the patent-office admitted to be material, and in which the alleged substitute for that element lacks the one feature which made such element itself

efficient. The conclusion arrived at is in accordance with the views expressed in *Shepard* v. *Carrigan*, 116 U. S. 593, 6 Sup. Ct. Rep. 493; *Fay* v. *Cordesman*, 109 U. S. 408, 3 Sup. Ct. Rep. 236; *Snow* v. *Railroad Co.*, 121 U. S. 617, 7 Sup. Ct. Rep. 1343; *Hendy* v. *Iron Works*, 127 U. S. 370, 8 Sup. Ct. Rep. 1275; *Wicke* v. *Ostrum*, 103 U. S. 461; *Brown* v. *Davis*, 116 U. S. 237, 6 Sup. Ct. Rep. 379. Decree for defendant.

