**OREGON SAW CHAIN CORPORATION,**
a Corporation, Appellant,

v.

**McCULLOCH MOTORS CORPORATION,**
a Corporation, Appellee.

No. 18290.

United States Court of Appeals
Ninth Circuit.

Oct. 9, 1963.

Rehearing Denied Dec. 12, 1963.

---

11. Restatement, Torts, Vol. 4, § 927, p. 647, supports this conclusion.

12. Criqui v. Blaw-Knox Corporation, 10 Cir., 318 F.2d 811, 812–813.

Lyon & Lyon, and Lewis E. Lyon, Los Angeles, Cal., and Buckhorn, Cheatham & Blore, and Elmer A. Buckhorn, Portland, Or., for appellant.

R. Welton Whann, Los Angeles, John F. Swain, San Francisco, and Robert M. McManigal, Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and KOELSCH, Circuit Judges.

BARNES, Circuit Judge.

McCulloch Motors Corporation, a corporation (hereinafter referred to as McCulloch, plaintiff or appellee) sued below for declaratory relief in connection with United States Letters Patent No. 2,508,784 and No. 2,622,636 (hereinafter referred to as '784 and '636, respectively). The sole defendant was Oregon Saw Chain Corporation, a corporation (hereinafter referred to as Oregon, defendant, or appellant), the owner of Cox patents '636 and '784.

This declaratory relief action was brought under Sections 1338(a) and 2201 of Title 28 United States Code. Jurisdiction on appeal lies with this court. 28 U.S.C. § 1291.

The district court judge granted a motion for partial summary judgment on file wrapper estoppel, holding that McCulloch had not infringed any claim of '636 by the manufacture, use or sale of saw chains, represented by Exhibits A–3 to A–21, inclusive, the alleged infringing chains.

The motion was granted in the court below on Ground 1 of McCulloch's motion, to-wit:

"1. The claims of defendant's Patent No. 2,622,636 are not infringed as a matter of law for the reason that because of file wrapper estoppel the claims are expressly limited so as to exclude from their scope plaintiff's curved tooth saw chains, Exhibits A–3 to A–21."

The second and third grounds urged in support of the motion for partial summary judgment[1] (public use and sale more than one year prior to filing of claims, and "double patenting") were not considered or ruled upon by the trial judge, and we are not here concerned with them.

The court made findings of fact and conclusions of law in support of its judgment. A vital finding is Number 6, reading as follows:

"6. Considering Patent No. 2,622,-636 by its four corners, the claims, specifications, the drawings and the file wrapper contents of Patent No. 2,622,636, together with Oregon Saw Chain's various admissions, there is no genuine issue that Patent No. 2,622,636 covered, and was meant to cover, only L-shaped teeth, i. e., teeth which were constructed so that the bottom cutting portion and the side cutting portion joined at an angle with a sharp cutting corner and not rounded, curved or arcuate teeth, as are McCulloch's Exhibits A–3 to A–21, inclusive."[2]

This finding follows precisely the thinking expressed by the trial judge in his memorandum of December 4, 1961, wherein, before using the exact language of Finding 6 quoted above, he stated:

"There does not seem to be any dispute that all of McCulloch's cutter teeth (Exhibits A–3 to A–21, inclusive) are curved, round or arcuate, and that none are L-shaped so that

1. Tr. pp. 274–275.

2. Tr. pp. 438–439.

the bottom and side cutters are both flat, joined at an angle with a sharp cutting corner. A physical examination of the exhibits shows there is no genuine issue as to this."[3]

Oregon urges that the facts so stated are in dispute, and the court's judgment is not supported in law.

A "kerf" is defined as "a slit or notch made in cutting, usu[ally] by a saw." (Webster's Third New Int. Dictionary, p. 1238 (1961).)

As we understand the problem, on any saw some portion thereof must not only cut down from its bottom resting upon the material to be sawed, but the slit or notch must be cleared of sawdust so as to permit a further downward thrust of the cutting surface; to prevent the sawdust from jamming between the side of the saw and the kerf walls; to hold the cutting teeth in perfect alignment and prevent "canting;" thus decreasing the amount of saw kerf; and act in some way to prevent the cutting teeth from "digging" too deep or too far down.

In earlier chain saws, this was accomplished by having different teeth with different purposes perform different functions. Some were "drag teeth" or "raker teeth" in addition to the requisite "cutting teeth." Wolf Patent, Fig. 4, No. 18, Tr. p. 675, filed March 10, 1920. The Martin Patent (Tr. pp. 672–674), filed November 18, 1914, showed "cutting teeth" (Fig. 5, No. 4) and "drag teeth" or "planer teeth" (Fig. 6, No. 10) and "gage teeth" (Fig. 6, No. 12). The Zandecki Patent (Tr. pp. 683–685), filed June 7, 1941, showed a chain with a "cutting tooth" (Figs. 3 and 4, No. 11); a "gage tooth" (Figs. 3 and 4, No. 12); and "clean-out teeth" (Figs. 3 and 4, No. 14).

In the original Hassler Patent (Tr. pp. 688–693), filed April 1, 1940, these different teeth were described as "cutting teeth" (Fig. 12, Nos. 60, 61); "router teeth" (Fig. 12, Nos. 62, 63); and "drag teeth" (Fig. 12, No. 67).

The '636 Cox patent, urges appellant, "is the first to disclose the invention of a simplified saw chain in which the kerf side wall and kerf bottom cutting functions were performed by the same teeth," (Appellant's Brf., p. 6; Reply Brf., p. 3) with "all cutter teeth alike except for being of right and left hand configuration."[4] This "single type of tooth" is the Cox invention, urges appellant, yet appellant states:

"The *invention* of the Cox patent *does not lie* in the particular shape or configuration of the cutting elements." (Emphasis appellant's.)

In support of this emphasized statement, however, appellant quotes from the Cox Patent, Col. 1, lines 14–24, the following:

"It is a principal object of this invention to provide certain improvements in chain saws of the kind above stated that will eliminate many of the difficulties and disadvantages that are now encountered in the use of, or which reside in many present-day types of chain saws *and which are caused primarily by the cutter design* and by reason of the fact that those cutters which form the sides of the kerf and the rakers or cutters which cut the kerf material free are separate from each other in the chain belt." (Tr. V–5, 661. Emphasis added.)

Despite the claimed *primary effect* of the cutter *design*, which "as illustrated

3. Tr. pp. 388–399.

4. We note here parenthetically that the Martin patent shows cutting teeth No. 4 "formed right and left," and arranged in pairs; the Wolf patent shows "cutting teeth" (Figs. 4 and 12, No. 23) extending alternately laterally against the side of the kerf (Fig. 12, No. 22) and the Joy patent (Tr. pp. 679–682), dated July 28, 1936, relating to coal cutting chain saws, has cutting tips "at different angles of inclination," "laterally diverging cutter teeth," that can be alternated laterally. Hassler (supra) has "one router tooth right handed, one left."

by Cox, have a side cutting portion and a bottom cutting portion which are joined together in L-formation and as indicated have sharp cutting corners" (Appellant's Brf., p. 7), appellant urges upon us that "the District Court erred in the construction of the Cox claims by limiting the same to L-shaped cutting teeth having bottom and side cutting portions which are joined at a sharp angle." (Brf. p. 8.)

This is not what the trial judge stated in his memorandum nor in his findings. Nowhere does he refer, as appellant states, to a joinder of the side and bottom cutting portions at "a sharp angle." He refers to the two portions "joined at *an angle*, with a *sharp* cutting corner." (Emphasis added.)

"L-shaped" is defined as "having the shape of a capital L" (Webster's Third New Int. Dictionary, p. 1342 (1961)).

We refer to and consider the drawing set forth in the margin. It is a portion of Exhibit B, showing Figure 3 of the Cox '636 Patent and Figure 3 of the McCulloch chain, Exhibit A–9.

Fig. 3.
COX PATENT 2,622,636

Fig. 3.
McCULLOCH CHAIN—Exhibit A-9

Appellant urges that one cannot read the Cox claims to require that the bottom cutting portion and the side cutting portion be "joined at an angle with a sharp cutting corner." We disagree. We can discover no other way that they could be read.

We have described one tooth with two cutting edges, (a) bottom cutting and (b) side cutting. The first is called in the claims an outer or cutter flange, or toe portion, of the cutter tooth. It is "substantially rectangular." "The forward edge of the flanged toe portion is *transverse* to the line of travel of the chain and is beveled and sharpened to present a planing or *cutting edge,* as shown at 48." (Emphasis added.) (Cox Patent, Col. 4, lines 65–69, Tr. p. 662.) The side cutting edge is "that vertical and forwardly

facing edge portion of the laterally inclined *shank portion * * * that is even with the [forward] cutting edge 48 * * * [and] * * * is designed to form the cut that defines the side of the kerf. *The sharpened angle that is formed by the merging of the chisel cutting edges 48 and 50 of the toe and shank portions, respectively, forms the lower corner cut of the kerf* as the link advances." (Cox Patent, Col. 4, line 75 to Col. 5, line 9. Emphasis added.)

It is difficult to see how one could state any more clearly that two cutting surfaces meet at a cutting corner at an angle, which angled corner is of necessity sharp.

We have been referring to the description of the invention in the '636 specifications. In the claims themselves, we find the same single cutter tooth with a side wall portion and an outer flange portion; the side wall portion being similarly laterally offset; the flange portion likewise extending substantially at right angles to the plane of said body, the foremost edges of said side wall and flange portions being likewise sharpened (Claim 1).

It is, of course, true that Cox did not claim he was inventing a single tooth with side and bottom corners joined at an angle with a sharp cutting corner. It is true he did not claim "my tooth is not rounded or curved or arcuate." But he did claim a tooth with an *angle*, not a curve, under any fair reading of his claims. To read his claims as to cover all curved teeth seems to us to unnecessarily and unfairly enlarge the doctrine of equivalents, as appellant suggests should be done.

■ The claim of a patent is to be understood and interpreted in the light of its specifications. Schriber-Schroth Co. v. Cleveland Trust Co., 1940, 311 U.S. 211, 61 S.Ct. 235; Payne Furnace & Supply Co. v. Williams-Wallace Co., 9 Cir. 1941, 117 F.2d 823.

"The claims are to be read in light of the specifications." Kemart Corp. v. Printing Arts Research Labs., Inc., 9 Cir., 1953, 201 F.2d 624, 633. "The claim is to be read in connection with the specifications." Schnitzer v. California Corrugated Culvert Co., 9 Cir. 1944, 140 F.2d 275, 276.

■ Thus, reading the claims and specifications alone, we can only agree with appellee and the court below that the claims cover only cutting edges—joined at an angle, with a sharp cutting corner. This produces an L-shape, without defining the precise angle of the L. L-shaped teeth, and only L-shaped teeth are described in the specifications, and shown in the drawings. Cf. McRoskey v. Braun Mattress Co., 9 Cir. 1939, 107 F.2d 143.

■ Specifications can be used to limit the claims, but not to expand them. Schnitzer v. California Corrugated Culvert Co., supra, 140 F.2d at 276. "If a patentee describes and claims only a part of his invention he is presumed to have abandoned the residue to the public." McClain v. Ortmayer, 1891, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800.

Saying that, we reach the admissions claimed by appellee to have been made by appellant during the course of the trial, which allegedly are contrary to its present position.

*First Claimed Admissions*

In preparation for trial, McCulloch filed interrogatories under Rule 33, including Interrogatory X, which requested identification of any saw chains "having a curved cutter portion and a toe" used, manufactured or sold before September 27, 1950.

Objection was made to said interrogatory by counsel for Oregon, who stated: "Reference to Patent 2,622,636 clearly shows that the claims thereof are not directed to any such structure." (Tr. p. 213, lines 3–5.)

Appellant agrees that '636:

"does not define that the cutter teeth have portions which are curved and have a toe * * *. It is perfectly

true that the claims do not, by their words, as differentiated from the claims of the '784 patent, define that the cutter teeth have portions which are curved and have a toe  *  *  *. It does not follow  *  *  * that such a cutter assembly does not have side and bottom cutting portions which extend to or beyond the medial plane of the kerf and that in such a structure  *  *  * that there is infringement of the claims of the '636 patent."

At best, this is an inadequate explanation, and at worst, a reaffirmed admission.

### Second Claimed Admission

This alleged admission is important in considering the question of "equivalents". It is McCulloch's position that 35 U.S.C. § 112 refers and applies only to claims which use the term "means," (or "step for performing a specified function"). The word "means" is not used in any of the claims here involved.

No cases are cited to us to support either party's interpretation of the section, save Winslow Engineering Co. v. Smith, 9 Cir. 1955, 223 F.2d 438, 442–443. In that case the claims were required to be strictly construed, as in Graver (Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672), there being no ambiguity in the claims. Here we think there is.

This admission claimed allegedly is an estoppel created by reason of the '784 patent. At page 116 of the Transcript, in defendant's answer to plaintiff's second interrogatory, the following appears:

"75(b)  Due to the curvature of the teeth of the chain shown in Patent 2,508,784, *they operate in a different manner* than the cutter teeth of  *  * '636." (Emphasis added.)

Patent '784 (Col. 6, lines 18–46) describes the advantages a rounded portion of a tooth "between the shank and the toe" has over the cutting teeth previously made "in the form of a knife blade  * an L-shape and a C-shape" as follows:

"A further feature of the invention *resides in the fact that the tooth portion between the shank and the toe is rounded whereby rounded corners 60 are formed in the kerf 61* as illustrated in Fig. 11. During normal cutting operation, the depth gauge 22 will ride against the bottom of the kerf in the flat portion thereof but next adjacent the curved portion. In this position of the depth gauge, the tooth will cut a proper slice of wood as indicated by the portion 62. Now if, because of play in the tooth linkage or any other reason, the cutting edge of the shank portion 32 should have a tendency to shift laterally outwardly, or to the right as viewed in Fig. 11, *the depth gauge would ride up on the slope of the rounded corner and withdraw the cutting edge* somewhat from the wood and thus create a resistance countering the tendency of outward movement of the tooth. *The tooth is thereby substantially and automatically retained in its proper path of travel.*

"It is also pointed out that *because the tooth portion* between the shank and the toe *is rounded, the side wall surfaces of the kerf will be smooth* due to circular overlapping of successive cuts. It will be obvious that *in the case of teeth having a sharp or pointed corner* at the outer lateral extremity, *the kerf sidewalls formed thereby are rough and jagged.*" (Emphasis appellee's; brf. pp. 36, 37.)

We agree it is reasonable to infer that when patent '784 was sought, the inventor believed the L-shaped teeth disclosed in '636 differed both in form and function from the curved teeth found and claimed in '784.

We are likewise not favorably impressed with the validity of appellant's answer to this alleged second admission (Reply Brf., p. 12, last paragraph).

### Third Claimed Admission

We note that McCulloch claims the primary difference between its tooth and the Cox '636 tooth is that Cox has two portions to the tooth and it has three; that McCulloch's tooth is of a different structure, and constitutes a different mode of operation.

This position, McCulloch urges, is substantiated and established by Oregon's memorandum in response to plaintiff's request for an order to compel further answers to interrogatories (Tr. pp. 122–123) where Oregon stated:

"In all the curved teeth charged to infringe, the kerf bottom cutting edge portion merges gradually with the curved kerf side wall cutting edge portion. *The curved portion extending between the flat toe and the outermost point of the curved shank* serves to cut both from the bottom as well as from the side of the kerf."

This, urges appellee, proves the McCulloch tooth has *three* cutting portions rather than *two,* as defined in the '636 patent.

Appellant answers this alleged admission by urging that it is impossible to determine or define where the bottom kerf cutting portion and the side wall cutting portion start—that there is no juncture or differentiating point; that the bottom and side cutting portions are formed "continuously."

### Fourth Claimed Admission

In Supplemental Anwer 11 to interrogatories (Tr. p. 125) Oregon stated that the curved tooth of the '784 patent eliminated "the *critical sharp corner* present in the chain of Patent 2,622,636." [5]

Oregon answers this claimed admission by stating the word "critical" is taken out of context. Not so, says McCulloch—

"A sharp corner can be formed only in an L-shaped tooth (sic). If such a sharp corner is critical then the 636 patent must necessarily relate only to L-shaped teeth. It can*not* include curved teeth, which necessarily lack the critical sharp corner."

We agree with appellant that at no time does the '636 patent, *by the language of its claims,* urge that the formation of the cutter teeth is in any way "critical" as to the invention claimed. But this does not solve the problem or eliminate the alleged admission. Its probative value, however, is problematical.

### Fifth Claimed Admission

On June 12, 1959, Oregon filed its answers to plaintiff's second interrogatories under Rule 33. Interrogatory 8 read as follows:

"Does defendant contend that the patent application which matured into Patent 2,622,636 *as originally filed* disclose at any place in the specifications, claims or drawings cutter teeth which have curved side walls cutting portions?" (Emphasis added.)

"Answer 8: No."

The admission is limited, of course, by the italicized portion of the question.

### Sixth Claimed Admission

Patent '636 was filed for on July 1, 1946. Claims 1 to 16, inclusive were cancelled and claims 17 to 21 (which ultimately became claims 1 to 5, inclusive) were filed with the Patent Office as an amendment to the patent application, apparently in May of 1948.

---

5. The entire answer to Interrogatory 11 reads as follows:

"*Answer 11*: In the chain of Patent 2,-622,636, the kerf bottom is cut entirely by action of the flat toe portions 48 (see Fig. 3), while the kerf sidewall is cut entirely by the action of the tooth shank portions 50, which tooth portions join at a sharp corner. In the Chain of Patent 2,508,784, the flat toe portions 33 (see Fig.

11) sever wood fibres with the grain along the central portion of the kerf bottom, while the curved shank portions 32 sever wood fibers across grain along the kerf sidewalls as well as with the grain along the adjacent kerf bottom portion, and at the same time the critical sharp corner present in the chain of the Patent 2,622,-636, is eliminated."

As appears in said amendment (Tr. p. 767), counsel for Mr. Cox stated: "[C]laim 17 * * * is definitely restricted to L-shaped cutter teeth of chain saws."

Claims 18 and 19, were alleged to be similar to 17, and claims 20 and 21 were alleged to be "dependent" on 18 and 17, respectively.

We discuss this admission later under "file wrapper estoppel."

### File Wrapper Estoppel

In the context of the foregoing facts and admissions, the trial court ruled on the motion for summary judgment, granting it on the basis of file wrapper estoppel alone.

In another "critical right angle" case, this court explained the principle of "file wrapper estoppel":

"Having asserted the novelty of the right angle principle in order to secure the patent, applicant cannot now expand his coverage to include other claims which were denied to him in the proceedings before the patent office. This is simply the exercise of the doctrine of 'file wrapper estoppel'—the gravamen of which is that an applicant who acquiesces in the rejection of his claim, and accordingly modifies it to secure its allowance, will not subsequently be allowed to expand his claim by interpretation to include the principles originally rejected or their equivalents." D. & H. Electric Co. v. M. Stephens Mfg., Inc., 9 Cir.

1956, 233 F.2d 879 at 883–884, and cases cited in note 7 thereof.

And see Shepard v. Carrigan, 1886, 116 U.S. 593 at 597, 6 S.Ct. 493 at 494, 29 L.Ed. 723, and cases cited.

Appellant urges that none of the claims of the Cox patent define teeth joined at an angle with a sharp cutting corner, or define *any shape* of corner between the side and bottom cutting edges, and that no file wrapper estoppel as to the cutter tooth corner shape does or can exist with respect to '636.

The court found to the contrary. The court first found (Finding 7, Tr. p. 439) that there were *three* and not *two* cutting portions in the accused teeth; that the kerf bottom cutting edge performed the function of cutting from the kerf bottom; the kerf side wall cutting edge performed the function of cutting from the kerf side wall, and *the curved portion extending between the flat toe and outermost point of the curved shank serves to cut both from the bottom as well as from the side of the kerf.*

The court further found that Oregon, in its response to certain requests for an order to compel answers to certain interrogatories had, on September 15, 1959, admitted the existence of said third cutting surface, with its dual purpose or function. (See Third Claimed Admission portion, supra.)

In support of the "two cutter portions" theory of '636, the court made Findings 11, 12 and 13.[6] And see also Findings 14–20, which likewise appear in the margin.[7] These are the basis for the

6. "11. In the original disclosure of the patent application, Serial No. 680,549, which matured into Patent No. 2,622,636, page 2, lines 5 to 11 of the File Wrapper Contents of said Patent No. 2,622,636, it is stated that it is a *prime* object of the invention to provide a saw chain embodying improvements which 'reside mainly in the provision of cutters that combine therein both the functions of side cutters and *rakers*.'
"12. In the original disclosure of the patent application, Serial No. 680,549, which matured into Patent No. 2,622,636, page 2 lines 12–16 of the File Wrapper Contents of said Patent No. 2,622,636, it

is pointed out that the saw chain of Cox has alternate right-hand and left-hand cutter links 'and each operates to cut one side of the kerf and to cut kerf material from between the *side* cuts, * * *'
"13. The principle of operation as described in Findings 11 and 12 requires a cutter tooth which has two cutter portions, a side cutter portion which is flat, and a bottom cutter portion which is also flat and which are joined together at an angle with a sharp cutting corner."

7. "14. On page 5 of the File Wrapper Contents of Patent No. 2,622,636, and more specifically, lines 18 to 20 thereof,

court's holding that patent '636 is limited to a saw chain having L-shaped cutter teeth, of which both bottom and side portions are flat and are joined at an angle with a sharp corner.

## A. Original Application

The original application for a patent discloses that "the difficulties and disadvantages" of July 1946 in chain saws was "caused primarily by the cutter design, and the separate cutter and raker teeth." (Tr. p. 722.)

We find appellee's statement accurate:

"A careful study of the Cox application as originally filed shows that Cox made no change whatsoever in the form, cutting action, or mode of operation of the cutting teeth of [prior art, namely] Hassler. The only change which he made was to combine the side cutter and the bottom cutter in order to have single [alternate] right hand and left hand L-shaped teeth." Brf. p. 10.)

Appellee reaches the conclusion that L-shaped teeth only are specified, by pointing out the top edge of the body blank (Fig. 3, No. 45) extends rearward along the link in a *plane perpendicular* to the plane of the main portion of the blank (Tr. p. 728), thus "eliminating any curvature to the flange 45," and because "the forward edge of the flanged toe portion is *transverse* to the line of travel," (Tr. p. 728) the toe side cutting edge must of necessity meet at L-shaped 50. (Fig. 3) This is further described in the file wrapper (Tr. p. 729, line 3) as "the sharpened angle" formed by merging 48 and 50, "forms the lower corner cut." At Transcript, p. 731, lines 18–20, the application discloses the junction of the two edges "cuts the corner of the base of the kerf." There can be no such *"corner"* without an L-shaped tooth, says appellee.

In summary, the Cox invention shows two cutting edges forming a corner, only L-shaped teeth (without regard to the specific angle of the L) can form a corner; the drawings and specifications show only L-shaped teeth; no alternative shape or form of cutter tooth is disclosed.

We think the language of the Supreme Court in Snow v. Lake Shore & Michigan Southern Railway Co., 1887, 121 U.S. 617, 630, 7 S.Ct. 1343, 30 L.Ed. 1004, is pertinent here. It reads:

"It is not admissible to adopt the argument made on behalf of the appellants, that this language is to be taken as a mere recommendation (or 'preferred form' or 'best mode contemplated') by the patentee of the manner in which he prefers to arrange these parts of his machine. There is nothing in the context to indicate that the patentee contemplated any alternative for the arrangement * * *",

nor did he describe such arrangement as not essential. Cf. Fulton Co. v.

---

the inventor Cox describes the operation of his rakers as follows: All cutter links operate not only as side cutters but also 'as rakers to remove the kerf *to the depth and to the width* defined by the coaction of the cutters.'

"15. The description referred to in Finding 14 defines a tooth which is L-shaped and in which two flat portions meet at an angle with a sharp cutting corner.

"16. Starting on line 3, page 8 of the File Wrapper Contents of Patent No. 2,-622,636, the inventor Cox makes the important statement, 'The sharpened angle that is formed by the merging of the cutting edges 48 and 50 forms the lower corner cut of the kerf as the link advances.'

"17. The description referred to in Finding 16 defines a tooth which is L-shaped and in which two flat portions are joined together at an angle with a sharp cutting corner.

"18. In each of the five forms of the invention disclosed by the Cox application, the teeth and cutting action are identical.

"19. All of the original claims, 1–16 of the application which matured into Patent No. 2,622,636, appearing on pages 14–16 of the File Wrapper Contents, are specifically limited to L-shaped cutter teeth.

"20. The patent application Serial No. 680,549, which matured into Patent No. 2,622,636, including the specifications, claims and drawings, is specifically limited to a saw chain having L-shaped cutter teeth in which the bottom and side cutter portions are both flat and are joined at an angle with a sharp corner."

Powers Regulator Co., 2 Cir. 1920, 263 F. 578; McRoskey v. Braun Mattress Co., supra.

We conclude the trial court properly found *the original claims* are limited to L-shaped teeth. (Finding 19, Tr. p. 442.)

### B.  *Subsequent File Wrapper Contents*

All original claims were rejected by the Patent Office on November 4, 1947, as "obviously fully reading on Hassler"— (prior art—Patent No. 2,326,854, granted August 17, 1943, filed April 1, 1940; Tr. pp. 686–693). Cox cancelled, and filed claims 17 to 21 May 1, 1948 (Finding 21, Tr. p. 442).

Claim 17 became claim 1 of the patent. It describes the cutter tooth with the same original side wall and toe portions, the latter "extending substantially at right angles to the plane of the body"; "alternative[ly] in opposite directions."

In support of his amendment, Cox's attorneys, anticipating the same objection of the Hassler prior art, pointed out, not that Hassler's teeth are L-shaped and his need not be, but that "Hassler's L-shaped teeth 62 and 63 are rigidly mounted upon the *same* cutter link" (emphasis by Cox; Tr. p. 767, lines 11 and 12). Can it fairly be said Cox merely looked on the L-shaped teeth described in his application and shown in his drawings as a mere "preference" or "best mode"? Apparently he thought more of the importance of the exact description of the teeth in his application, for he next states, on the same page of his file wrapper:

"None of the other references of record is regarded as particularly pertinent with respect to the structure defined in Claim 17, and *which is definitely restricted, to L-shaped cutter teeth of chain saws.*" (Tr. p. 767. Emphasis added.)

Apparently the patent examiner was of the same mind. Claims 17 to 21 were again rejected "over Hassler in view of Day. Hassler discloses L-shaped cutting teeth [etc.]." (Tr. p. 769.)

The application was amended June 8, 1950 (Tr. p. 771). Claims 20 and 21 were stated to be dependent on claims 17 and 18, and new claims 22 and 23 were filed. On April 3, 1951 all claims were rejected.

On September 27, 1951, claims 24 to 29 (patent claims 3–8) were filed by amendment. These new claims were broad, and if valid, *could read on any tooth of any form*, including appellee's curved tooth chain. They referred to "sharp-edged cutting elements" only!

Obviously, urges appellee, this was an attempt to obtain claims to cover "curved teeth" chain which had appeared on the market a year earlier. Whether this be so or not is unimportant, for all claims were rejected on October 23, 1951 (Tr. pp. 789–790). "This rejection is made final," said the Patent Office.

Despite such "finality" appellant filed an amendment dated October 31, 1951, which abandoned the broad claim theory of the September 27, 1951 amendment, and went back to an amendment of claims 24, 25, 26 and 27 (now claims 3, 4, 5 and 6) which described the cutting elements as one tooth made up of two portions; a side wall cutting edge and a bottom cutting edge.

Instead of the four elements of the broad claim, with no description of the teeth, the fifth element disclosed limits the claim again to the original L-shaped tooth with *two* cutting surfaces, meeting at a necessarily sharp point, and necessarily meeting at an angle.

The district court so found. (Findings 24–28; Tr. p. 443.)

Thus if the Cox claims were to be construed to include the rounded cutter portion of the McCulloch patent, it would make them consistent with the *broad* Cox claims of September 27, 1951, which the Patent Office rejected, and which Cox amended so as to eliminate the broad claims and reinstate "a bottom cutting edge portion" which extended "continuously and laterally inwardly from the side wall cutting edge portion to a point beyond the median line of the chain." This the McCullough teeth with their

third rounded cutting surface did not do, and hence is not similar.

We could continue at some length on this subject of file wrapper estoppel.

Claim 7 (originally 28) was, in the eyes of the examiner at least, limited to L-shaped teeth (Tr. p. 790). Claims 8 and 9 have the same limitations as 7.

Considerable emphasis is placed by appellant on claim 10 (originally 31), because the amended claim stated:

"[T]hey are not limited to a cutter link in which the toe portion extends at right angles with respect to the side wall portion. Obviously, the toe portion may be arcuately curved, but the salient feature is that the toe portion extends inwardly from the side wall cutting portion of the cutter element by an amount at least equal to one half of the width of the kerf." (Tr. p. 801.)

But as appellee points out, a curved toe portion would not *eliminate* the sharp angle between the side wall cutting portion and the toe portion, but only make it an angle greater or lesser than forty-five degrees, dependent upon whether the leading toe edge were curved convexly or concavely. It would not create a curved tooth, or curved side wall and its function would differ from a tooth with a third curved portion.

██ ██ It is well established that the claims of a patent must be read and interpreted in the light of claims which had been rejected. In the case of Hall v. Wright, 9 Cir. 1957, 240 F.2d 787, the court held that it is a well-known rule of patent construction that a claim in a patent must be read and interpreted with reference to claims which have been rejected. Claims which have been allowed cannot, by construction, be read to cover what has thus been eliminated from the patent. Schriber-Schroth Co. v. Cleveland Trust Co., supra (rehearing denied 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132).

To the same effect is Moon v. Cabot Shops, Inc., 9 Cir., 1959, 270 F.2d 539, where this court held:

" * * * And a claim must be read and interpreted with reference to

claims which have been rejected. Claims which have been allowed cannot, by construction, be read to cover what has been thus eliminated from the patent. Hall v. Wright, 9 Cir., 240 F.2d 787, 794." (270 F.2d at 543.)

██ A disclaimer "must be strictly construed" against the patentee; an inventor's amendment recognizes and emphasizes the difference between the language used and "proclaim[s] his abandonment of all that is embraced in that difference." He cannot regain "by recourse to the doctrine of equivalents" that which he, by strict construction of the claim, has disclaimed. The doctrine of equivalents "at most operates, by liberal construction, to secure to the inventor the full benefits, *not disclaimed*, of the claims allowed." Exhibit Supply Co. v. Ace Corp., 1942, 315 U.S. 126 at 136–137, 62 S.Ct. 513, at 518, 86 L.Ed. 736. (Emphasis added.)

### The Ackley and Merz Interferences

Appellant claims the Patent Office could not have contemplated Cox only claimed an L-shaped tooth, because it declared two interferences, No. 85673, with respect to the Cox application, and those filed by Richard E. Ackley and Max Merz and No. 85674 between Cox's application and Ackley's application shown by Ackley Patent No. 2,658,-573, granted November 10, 1953. The Merz application is shown by the file wrapper in Merz Patent No. 2,632,484.

Merz had only cutters which were curved round and arcuate and alternated from side to side. (Tr. p. 855.)

Ackley had cutter teeth almost exactly similar to Cox, which alternated right and left. (Tr. p. 715.)

In both interferences Cox prevailed on the issue of priority. This makes it not only clear but conclusive, asserts appellant, that the Patent Office in granting the Cox patent did not construe the claims included in that interference to be limited either to L-shaped cutting teeth or to cutting teeth formed with bottom and side cutting portions which were

joined at an angle with a sharp cutting corner.

■ This is answered by appellee in asserting that appellant, by its argument on this subject, seeks to use interference proceedings in the Patent Office to *expand* the scope of the claims.

"As patents are procured ex parte, the public is not bound by them, but the patentees are. And the latter cannot show their invention is broader than the terms of their claim * * *" Keystone Bridge Co. v. Phoenix Iron Co., 1877, 95 U.S. 274 at 279, 24 L.Ed. 344.

And, since a patentee cannot resort to the specifications of his own patent for the purpose of enlarging his claims (Lanyon v. M. H. Detrick Co., 9 Cir., 1936, 85 F.2d 875), it should be obvious that a patentee cannot resort to the specification of a patent issued to *someone else* for the purpose of enlarging his claims.

■ But more important is the fact pointed out by appellee that the interference proceedings never went beyond the preliminary stage. Ackley defaulted. Merz filed a disclaimer.

Under such circumstance, "the Patent Office would not and could not consider the matter of file wrapper estoppel arising during the prosecution of the Cox application, since such estoppel is binding only upon Cox."

■ Thus the Patent Office never reached the question of file wrapper estoppel as between the parties to this litigation; the matter was not litigated, and even had it been fought through the Patent Office, and resolved adversely to appellee herein, the opinion and ruling of the Patent Office would not be binding upon the court below: " * * * the courts are not bound to follow the Patent Office," citing Dwight & Lloyd Sintering Co. v. Greenawalt, 2 Cir. 1928, 27 F.2d 823, 832. Stewart-Warner Corp. v. Jiffy Lubricator Co., 8 Cir. 1936, 81 F.2d 786, 793.

Further, the court below, in deciding what the claims were, was passing not only on the file wrapper estoppel, but what the file wrapper showed in the light of the admissions made in this litigation, and by the claims of Cox's '784 patent, all as hereinbefore discussed.

We are satisfied the ruling of the district court was correct, and we affirm.